**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Hermilo Diaz-Lastra,<br><br>Defendant. | No. CR-19-00396-001-PHX-DWL<br><br>**ORDER** |

## INTRODUCTION

Pending before the Court is Defendant Hermilo Diaz-Lastra's motion to dismiss his indictment for illegal reentry. (Doc. 17.) He argues the Court should dismiss the indictment because the Government cannot prove an essential element—a valid order of removal. Specifically, he contends that the Notice to Appear ("NTA") that was issued at the start of his removal proceeding in 2004 was defective, because it didn't specify the address of the Immigration Court where it would be filed, and jurisdiction therefore never vested in the Immigration Court that later issued his removal order. For the following reasons, the Court denies the motion.

## BACKGROUND

Diaz-Lastra is a citizen of Mexico who illegally entered the United States near Naco, Arizona in 1999. (Doc. 17-1 at 3-4.)

On March 11, 2004, Diaz-Lastra was arrested on an immigration warrant. (Doc. 19-1 at 3.) That same day, he was served with a document entitled "Notice to Appear."

(Doc. 17-1 at 3-5.) That document indicated he was "an alien present in the United States who ha[d] not been admitted or paroled" and had been convicted in Arizona state court for aggravated driving under the influence, "a crime involving moral turpitude." (*Id.*) The NTA did not indicate the date, time, or location of Diaz-Lastra's removal hearing or the address of the Immigration Court where the NTA would be filed. However, the "Certificate of Service" appearing at the end of the document, which was signed by an immigration officer, stated that Diaz-Lastra had been "provided oral notice in the Spanish language of the time and place of his or her hearing and of the consequences for failure to appear." (*Id.* at 5.)

On March 15, 2004, Diaz-Lastra was personally served with a document entitled "Notice of Filing," which indicated that the "Notice to Appear issued in [his] case" would be filed at the Eloy Detention Facility at 1705 E. Hanna Road, Suite 366 in Eloy, Arizona. (Doc. 19-1 at 7.)

On March 17, 2004, Diaz-Lastra was served, through a custodial officer, with a "NOTICE OF HEARING IN REMOVAL PROCEEDINGS," which indicated the date, time, and location of his removal hearing. (Doc. 17-1 at 12.) The location listed in that document was the same Eloy Detention Facility listed in the "Notice of Filing." (*Id.*)

On March 23, 2004, Diaz-Lastra appeared before Immigration Judge Thomas Michael O'Leary, who ordered that Diaz-Lastra be removed from the United States to Mexico. (*Id.* at 14.) The removal hearing took place in Eloy, Arizona. (*Id.* at 17.) The removal order indicates Diaz-Lastra waived his right to appeal the order. (*Id.* at 14.)

Diaz-Lastra was deported to Mexico that same day. (*Id.* at 22-23.) Before removal, he affirmed he did "not currently have any appeal of [his] immigration case with the Board of Immigration Appeals (BIA), the U.S. District Court, or the 9th Circuit U.S. Court of Appeals." (Doc. 19-1 at 9.)

On April 4, 2019, immigration officers arrested Diaz-Lastra in Chandler, Arizona. (Doc. 1 at 2.) On April 10, 2019, a federal grand jury returned an indictment charging Diaz-Lastra with illegal reentry under 8 U.S.C. § 1326(a) and (b)(1). (Doc. 7.)

# ANALYSIS

I. <u>Legal Standard</u>

The Federal Rules of Criminal Procedure permit a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant may move to dismiss for "a defect in the indictment or information, including . . . failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant 'left the United States under order of exclusion, deportation, or removal, and then illegally reentered.'" *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (citation omitted). Thus, "[a] defendant charged under § 1326 has a due process right 'to collaterally attack his removal order because the removal order serves as a predicate element of his conviction.'" *Id.* (citation omitted). To prevail in a collateral attack on a removal order, the defendant "must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Id.* (citing 8 U.S.C. § 1326(d)).

II. <u>Legal Backdrop</u>

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, establishes the statutory framework for the initiation of removal proceedings. As relevant here, the INA contains a provision concerning NTAs—8 U.S.C. § 1229(a). Section 1229(a) provides, in relevant part, that "[i]n removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given . . . to the alien." 8 U.S.C. § 1229(a)(1). The provision then specifies what must be contained in an NTA. *Id.*

The regulations implementing the INA also contain provisions regarding NTAs. Under 8 C.F.R. § 1003.14(a), "[j]urisdiction vests . . . when a charging document is filed

with the Immigration Court by the Service." A "[c]harging document" is defined as "the written instrument which initiates a proceeding before an Immigration Judge" and includes a "Notice to Appear." 8 C.F.R. § 1003.13. A separate regulatory provision provides that the "Notice to Appear must . . . include," among other elements, "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear." 8 C.F.R. § 1003.15(b)(6).

III. Discussion

The Court will begin by addressing the third element of the collateral attack—whether the removal order was fundamentally unfair. To satisfy that element, Diaz-Lastra bears the burden of establishing (1) the deportation proceeding violated his due process rights and (2) the violation caused prejudice. *Raya-Vaca*, 771 F.3d at 1201-02.

Diaz-Lastra argues "the removal order is void and cannot survive collateral attack" because "it did not include the address of the Immigration Court where the notice to appear would be filed" and therefore "jurisdiction never vested with the Immigration Court." (Doc. 17 at 8.)

This argument lacks merit. The primary case on which Diaz-Lastra relies is *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). There, an alien sought to challenge her removal order by arguing that, because her initial NTA failed to specify the time and date of the proceedings, the removal order that was issued at the conclusion of the proceedings was void for a lack of jurisdiction. *Id.* at 1159-60. The Ninth Circuit rejected this argument, holding that (1) the regulations implementing the INA, not the statutory text of the INA, "define when jurisdiction vests";[1] (2) the regulations don't necessarily require the time and date of the proceedings to be specified in the NTA—they can be supplied in later documents;[2] and (3) the alien had received "actual notice of the hearings through multiple follow-up notices that provided the date and time of each hearing."[3] The court

---

[1] *Id.* at 1160.

[2] *Id.* at 1159-60 (citing 8 C.F.R. §§ 1003.15(b) and 1003.18(b)).

[3] *Id.* at 1159.

thus concluded: "The bottom line is that the Immigration Court had jurisdiction over Karingithi's removal proceedings. And . . . the hearing notices Karingithi received specified the date and time of her removal proceedings. Thus, we do not decide whether jurisdiction would have vested if she had not received this information in a timely fashion." *Id.* at 1162.

Diaz-Lastra argues that *Karingithi* supports his § 1326(d) challenge, even though the alien lost in that case, because his NTA had a different defect than the NTA in *Karingithi*. Specifically, he contends that his NTA omitted the "address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear," which is a piece of information that *is* required by the relevant regulations,[4] whereas the omitted information in *Karingithi* (time and place of the hearing) isn't required by the regulations.

Although this argument has been accepted by some other district courts in recent decisions,[5] the Court does not find it persuasive. In *Karingithi*, the Ninth Circuit didn't actually hold that the removal order would have been invalid had the information omitted from the NTA been required by the regulations. To be sure, the opinion contains some language that can be construed as suggesting or implying this outcome. *See, e.g.,* 913 F.3d at 1160 (stating that "the regulations . . . clearly enumerate requirements for the contents of a notice to appear for jurisdictional purposes"). Those passages, however, are arguably dicta because they were unnecessary to the resolve the narrow issue before the court— whether an NTA's omission of information not required by regulation creates an irrevocable jurisdictional defect. *United States v. Anekwu*, 695 F.3d 967, 975 (9th Cir. 2012) ("We have 'described discussions that are unnecessary to a decision as dicta.'") (citation omitted). Indeed, in the final sentence of the opinion, the *Karingithi* court made clear that it was not "decid[ing] whether jurisdiction would have vested if [the alien] had not received [the time and place] information in a timely fashion." 913 F.3d at 1162. This

---

[4] 8 C.F.R. § 1003.15(b)(6).

[5] *See, e.g., United States v. Ramos-Urias*, 2019 WL 1567526 (N.D. Cal. 2019); *United States v. Muniz-Sanchez*, 388 F. Supp. 3d 1284 (E.D. Wash. 2019); *United States v. Martinez-Aguilar*, 2019 WL 2562655 (C.D. Cal. 2019).

passage, and the panel's emphasis on the narrowness of its opinion, underscores why it would inappropriate to interpret *Karingithi* as announcing some expansive new rule that requires reversal under different sets of facts (such as the facts presented in this case). Finally, it is also notable that *Karingithi* didn't mention, much less purport to overrule, *Kohli v. Gonzales*, 473 F.3d 1061 (9th Cir. 2007)—a decision that, as discussed below, also addresses the jurisdictional consequences of omitting information from an NTA. For all of these reasons, the Court doesn't interpret *Karingithi* as broadly holding that any removal order issued by an immigration judge at the conclusion of a proceeding that was initiated by a defective NTA is irrevocably tainted and invalid.

On the merits, Diaz-Lastra's position fails because it is not supported by the regulatory text, *Kohli*, or common sense. The immigration regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). The regulations further provide that an NTA qualifies as a "charging document." 8 C.F.R. § 1003.13. In other words, the plain language of the regulations suggests that jurisdiction vests in the immigration court once an NTA is filed. Here, an NTA was filed. It follows that jurisdiction vested. Although Diaz-Lastra's NTA didn't include one particular piece of information that is supposed to be included in all NTAs— the address of the Immigration Court where the NTA will be filed—section 1003.14(a) doesn't say that the existence of jurisdiction is somehow contingent on the NTA containing every piece of information that ought to be included within it. Section 1003.14(a) thus suggests that the filing of the NTA (even an NTA that may be flawed) is sufficient to vest the immigration court with jurisdiction.

The Ninth Circuit's decision in *Kohli* supports this interpretation. There, the court rejected an alien's argument that, because her initial NTA failed to specify the name and title of the issuing officer, the removal order that was issued at the conclusion of the proceedings was void for a lack of jurisdiction. 473 F.3d at 1063. Although the court acknowledged that the omitted information was not "required by any statute or regulation"

(*id.* at 1067-68)—whereas, in this case, Diaz-Lastra correctly points out that the missing address information is required by regulation—the court's discussion of the concept of "jurisdiction" in immigration proceedings remains instructive. Specifically, the court held that "[t]he government met its burden of establishing jurisdiction in the Immigration Court by issuing an NTA . . . and then filing that [NTA] with the Immigration Court." *Id.* at 1068 (citing 8 C.F.R. § 1003.14). The court elaborated: "*[J]urisdiction vests in the Immigration Court 'when a charging document is filed' with the Immigration Court. Section 1003.14 requires a certificate showing service, but does not suggest that there are any other jurisdictional requirements.*" *Id.* at 1066 (emphasis added) (citations omitted). This is the same conclusion set forth in the preceding paragraph of this order—the *filing* of the NTA is the act that creates jurisdiction, irrespective of any flaws or omissions within the NTA. *See also United States v. Arteaga-Centeno*, 2019 WL 3207849, *7 (N.D. Cal. 2019) ("[I]n light of *Karingithi* and *Kohli*, the Court understands § 1003.15(b)'s requirements as non-jurisdictional. In consequence, an NTA that lacks the information required by § 1003.15(b) may still vest an [Immigration Judge] with jurisdiction.").

The *Kohli* court went on to hold that, even if the NTA had been defective, the alien hadn't suffered any prejudice from the defect because "[w]hen Kohli appeared before the [Immigration Judge], she accepted service of the NTA, admitted the factual allegations in the NTA, and conceded removability." *Id.* at 1068. This lack of prejudice was relevant because "[w]hen presented with allegations that an agency has violated its own regulation, . . . such a claim is subject to judicial review, but . . . in order to be granted relief 'the claimant must show that he was prejudiced by the agency's mistake.'" *Id.* at 1066 (citation omitted). Put another way, "the alleged defect in Kohli's NTA does not automatically deprive the Immigration Court of jurisdiction." *Id.* at 1069.

These principles doom Diaz-Lastra's claim. It is undisputed in this case that an NTA was filed with the immigration court, Diaz-Lastra doesn't contend he suffered any prejudice from the NTA's failure to identify the address of the immigration court where it would be filed, and indeed it would be impossible for Diaz-Lastra to make such a showing

because he was orally advised (by the immigration officer delivering the NTA to him) of the time and place of his hearing, he was subsequently served with other documents that provided all of the necessary information, and he personally appeared at his removal hearing.

Finally, this outcome is consistent with common sense. Diaz-Lastra's NTA omitted a single, technical piece of information that had utterly no impact on his ability to understand, participate in, and, if he so desired, contest the removal proceedings. It would elevate form over substance to conclude the removal order issued at the conclusion of his proceeding was somehow void for a lack of jurisdiction. *Cf. Karingithi*, 913 F.3d at 1159 ("We also note that the petitioner . . . had actual notice of the hearings through multiple follow-up notices that provided the date and time of each hearing.").[6]

…

…

…

…

---

[6] It also bears noting that immigration courts are not Article III courts. This is a potentially important distinction because, to succeed on a § 1326(d) challenge, a defendant ordinarily needs to show he exhausted his administrative remedies. *Raya-Vaca*, 771 F.3d at 1201. Here, Diaz-Lastra argues that "the absence of jurisdiction to conduct removal proceedings rendered the proceedings void, such that no exhaustion was necessary." (Doc. 17 at 10-11). It's not clear this argument is correct. Recently, in *United States v. Cortez*, 930 F.3d 350 (4th Cir. 2019), the Fourth Circuit rejected a § 1326(d) challenge premised on the omission of information from the defendant's NTA. Among other things, the court concluded that the defendant's exhaustion arguments were based on a faulty "analogy to federal court subject matter jurisdiction under Article III of the Constitution" and emphasized that "an immigration court is not an Article III court, and a removal proceeding is an agency process, not an Article III adjudication. And as the Supreme Court has instructed, we should not 'reflexive[ly] exten[d] to agencies . . . the very real division between the jurisdictional and nonjurisdictional that is applicable to courts.' Rather, because the power of administrative agencies (unlike courts) is prescribed entirely by statute, any 'improper[ ]' agency action is 'ultra vires,' and there is "no principled basis for carving out some arbitrary subset" of agency errors as 'jurisdictional.' Cortez's claim that the immigration court lacked the authority to hear his case, in other words, is not meaningfully distinct from a more routine claim that an immigration court has misconstrued the INA." *Id.* at 357 (citing *City of Arlington v. FCC*, 569 U.S. 290, 297-98 (2013)). The Court need not reach this issue here, in light of its conclusion that Diaz-Lastra hasn't satisfied a different element under § 1326(d), and simply notes that it potentially provides an alternative reason for denying Diaz-Lastra's motion. *See also Kohli*, 473 F.3d at 1068-69 (looking to decisions from the BIA to understand "the relationship between jurisdiction and prejudice" in the immigration court context).

Accordingly, **IT IS ORDERED** that:

(1) Diaz-Lastra's motion to dismiss his indictment (Doc. 17) is **denied.**

Dated this 13th day of September, 2019.

Dominic W. Lanza
United States District Judge